Good morning. My name is Karen Frostrom and I represent the appellant Raoul Clymer. The main issue that we bring to the court today is that there is absolutely no precedent for what the district court did here. The case was dismissed on the issue of an assignment and none of the cases supporting that actually do support it. The reason for that is that an assignment of all rights is valid and that's what you have here is you have Excuse me. What was the assignment of all rights in what or to do what? In other words what was assigned here was the rights in property as I understand it. The little chosen action thing was stuck in but it was still in the property and how does that relate to what the cause of action here which was not anything about first of all there really wasn't a right in the property because they didn't own the property they had a deed of trust in the properties but second of all this was not this was a RICO claim which how does that manifest itself as a right in the property? The initial assignment. It's about the property but it's not a right in the property. The initial assignment was and this is at ER 332 was the assignment of half interest in the property and any of his rights. And what? Keep going. Keep reading. Yes any of his rights the chose of action which was in handwriting comma title interest to the property. To the property. So we're all talking about the property. We're talking about the property and any of the rights associated with the ownership of that property which included according to the mortgage pool case the rights to file and pursue a RICO cause of action. And the full assignment of that provides that you can file a RICO cause of action. The assignment of a right or a chose of action giving all benefit of all assumptions to the plaintiff on a 12b6 motion gives the chose of action even if it's in handwriting the legal effect that it should have. And the legal effect is that a legal cause of action cannot be split. You can't have two persons with the right to. You cited a case. What case is that you're citing? That RICO can be assigned? No I understand that RICO can be assigned. The question is how this assigned a RICO claim. I'm sorry I apologize. I couldn't hear that. I don't understand how this language assigned a RICO claim. When it assigned I mean first of all despite first of all there's an argument about where the one half whether it applies to both halves of the sentence or one half. In other words whether it's one half of his rights title and interest which is the more usual way you would read this. But leaving that aside for the moment how is the assignment of rights title and interest and chose of action. I don't know what a chose of action in a property is but whatever. How is that assigning a RICO claim which isn't the property or an interest in a property or a title in the property or a right in the property. Answering I hear two questions in that one is what chose of action means and for that I'll say I don't know what a chose of action is but I don't know what a chose of action in said property is. The Wellpoint case I believe distinguishes between when an assignment is sufficient to assign a RICO case and when it's not. Wellpoint provides that when you have language that says rights title and interest that's insufficient. When you have all of causes of action that is sufficient. This particular assignment says any and all rights. Under Wellpoint that's sufficient. In said property. That's the part you're leaving out. The issue here is that it doesn't just say in the property it says one half interest in the property and any of his or her rights. Rights title and interest in the property. What's the fraudulent scheme that's in this case is that the quote unquote developers came to Mr. Clymer and said. Essentially the misrepresentations that induced him to give the loan right? The misrepresentation was we need your money to develop this property. When in fact they used the 3.5 million dollars as collateral for a larger loan that they then converted from a construction loan into a line of credit to build out 305 more stores of their Verizon wireless outlets. It's our allegation that that was the intent from the beginning and that when they came to the Climbers for this money they wanted that money to use for collateral for the loan that they then had to deal with Mr. Cohen at Alliance Bank to switch it over to a line of credit without providing any proof that they had accomplished any of the precedents in the construction loan agreement to convert it to a line of credit. Your theory is that you're construing the fraudulent scheme in connection with a loan transaction very broadly to include a loss to the ultimate property. Is that how you get to this assignment being an assignment of a legal cause of action relating to the property? No, the legal cause of action is related to the loan on the property which relates to the property. And so the assignment doesn't say relates to, does it? The assignment, I'm sorry? The assignment doesn't say relates to the property, it says in the property. The assignment is of all of the rights and causes of action related to the property transaction. It says in the property, does it not? You're adding language that isn't there and you're leaving out language that is there. It says any of his or her rights, chose of action, title and interest in the property. Those are discrete and individual rights. And so any of his or her rights is written as separate and distinct. And I think that it's important to note at this point that if the court is finding any ambiguity or different interpretations possible in that assignment, that that is a question of fact which could not have formed the basis for the 12b-6 granting of the motion. The court cannot, as a matter of law, decide which interpretation to give to a contract. That requires some taking of facts and extrinsic evidence. Can I ask, just stepping back a moment, is this a standing issue in the Article 3 sense that we would have to reach it rather than getting to the merits of the dismissal of the RICO claim? In other words, could we decide this case on the merits of the RICO claim as to whether the dismissal of the RICO claim was proper and leave aside the question of whether the assignment was adequate? I want to make sure I'm understanding that clearly enough. Could you decide whether this is Article 3 standing setting aside the issue of the assignment? I'm asking whether this variety of standing, which is essentially based on the federal rules, is the kind of jurisdictional question that we can't skip, to put it essentially. If we thought there was no RICO cause of action here anyway, could we get to that issue or do we need to decide this assignment question? I'm not sure that I can see a way to set aside the issue of Article 3 standing. Well, I'm asking whether this is Article 3 standing. That's what I'm trying to find out. All right. I believe that the issue of whether there's Article 3 standing is one that does depend on the assignment, and I think that the assignment is central to this. But if you look at the — and I want to reserve a little bit of time for my reply, but if you find that there was an issue with the assignment and that it should be one where Ben Clymer should have been a party, our position is that either the defendant should have had to file a cross-complaint to add him as a party or they should have considered that their remedy was abatement if there was a second lawsuit filed. And I would like to reserve the last minute of my time for rebuttal. No worries. We'll put a couple more minutes on the clock when you come back. Good morning, Your Honors. May it please the Court. Efrat M. Kogan on behalf of Alliance Bank, now CBT. I want to advise the Court that there are two co-defendants here. I will be taking five minutes, and I will reserve the rest of the time for my co-defense counsel. I want to start by, I believe, answering Judge Berzon's question, which is this is a standing issue. This particular plaintiff does not have standing to pursue. Standing in the jurisdictional sense, not in the cause of action sense. That's what I'm trying to find out. I'm sorry. Ask the question again. Under Steele Co., the Supreme Court case, if this is standing in the jurisdictional sense, then we have to decide the standing question. But sometimes the term standing is somewhat misused or used to deal with the question of whether this person has a cause of action, not whether they have Article III standing. And I'm asking you what variety of standing is this, or could we simply skip the so-called standing question and get to the merits of the RICO issue? The answer is that this party doesn't have standing in the sense that he is not aggrieved. So I think it's standing. I believe it is Article III jurisdictional standing, and we need to decide it. I believe that it is. And under the law, I believe the Court has the issue correct. Under the law, in order for there to be an assignment of a RICO claim, the RICO claim has to be expressly assigned. If, as plaintiff's counsel claims, it's ambiguous, and I submit that it's not, then it's not an express assignment, and the assignment can't convey any rights. Well, I understand her argument to be a concession of ambiguity. I think her argument is that it was expressly assigned. The choice of action was expressly assigned. But if it's ambiguous, then it's a fact question. So what was expressly assuming that we say this assignment assigned something, what was assigned as part of this assignment? It assigned a one-half interest in the property and in all right title interest and whatever chose of action means in this context in said property, meaning in the PIMLICO property. Is there an ambiguity from the phrase chose of action that was interlineated? No, it's not. And the reason is because the case law, Lerman, for example, which deals with this and Gulfstream, say that the way you assign a RICO claim is you say I'm assigning the RICO claim or you say we are assigning any and all claims of whatsoever kind and nature. Counsel, it's not your position that that precise language has to be used, right? That language or language that's similarly clear, yes, Your Honor. So it's not the problem that it's not an express assignment, is it? Isn't it the specificity of the assignment? You're assigning something, right? They're not assigning a RICO claim because you can't by general assignment language do that, and that's the most that this is, general assignment. So does that mean the answer to the question is yes? Well, you could do it by general language if it's the right general language, right? You could do it by general language if it's the right general language, i.e., any cause of action having to do with X. That would be good enough, right? That would be, but this assignment doesn't say that, and I would say that... So it's not the generality either. It's that it's just about a narrow set of things having to do with interest in this property and not how the property was acquired or fraud in the transaction or anything like that. Correct. And the other problem, of course, with the assignment, it's an assignment of a one-half interest. PIMLICO did not consent to have claims split, and the plaintiff did not join B&D Real Estate, the trust. I don't really understand this one-half interest assignment notion. I mean, you can't assign... Is there any reason you can't assign a half interest in a piece of property? And then have the rights attendant to owning that half interest? I can't be right. No, you have... A party has the right to assign a one-half interest, but when that party seeks to sue others on whatever claims that party has, they can't simply sue them on the one-half interest. They have to join the other party because otherwise the defendants are subject to split claims. And inconsistent results. And inconsistent results. I'm at five minutes, so I'm going to... Can I just answer one last question? Go ahead, Judge Berzon. There will be two last questions. Okay. Judge Berzon. Go ahead. All right. Would it make a difference if this had said rights, chose of action, title, interests relating to the property or transactions in connection with the property? Would that make this a different case? I'm not... I don't believe that that would be sufficient, but that isn't the language of this claim. Well, why wouldn't it? That is Judge Wynn's question, though. So why wouldn't that be sufficient, counsel? Because claims relating to the property I think is still not sufficiently expressed. Well, it's not specific enough to cover the underlying transactions? It's not specific enough to cover a RICO claim. One last question is my understanding is that at some point the plaintiff finally said, okay, Ben Clymer will come into the case. At what point was that? Was it after the last, the final judgment in the case? At some point. Ben Clymer was assigned his one-half interest in May 2010. No, I mean the other. I'm sorry, the other Clymer. In other words, I thought that after the second decision in the district court, I thought it was Ben Clymer was the original Clymer, said he would in fact come into the, or the representation was made that he would join the case. Is that right? I don't believe so, Your Honor. Raoul Clymer? Are we talking about Raoul Clymer? Raoul Clymer. The original brother? Raoul Clymer is the one who holds the imperfect assignment. Right. Ben Clymer was the original beneficiary. And I thought that it was now represented that he was willing to come into the case. That's not true. Not that I'm aware, Your Honor, no. Wasn't there a motion to that effect? It was filed after the judgment was entered in the district court? Your Honor, I would have to check the file. Motion to alter the judgment, I believe, is what Judge Berzon is referring to. But at any rate, I think you've answered her question. Thank you. Thank you, Your Honor. Could you put two minutes on the clock, please? Yes. No, we now have the other party. Oh, I'm sorry. We're not done. Sorry, sorry. So I think your time has run down. So I think we need to put two more minutes on the clock here. We kept your co-counsel with extra questions. Go ahead, please. Thank you. May it please the Court. My name is Robert Shaughnessy. I'm here this morning on behalf of the appellees Go Wireless and Kevin Elder. And if I understand the conversation so far with respect to the assignment and let me clarify one thing. There was a Rule 58 motion that was untimely in which there was an offer to add Ben Clymer. As a plaintiff, Ben Clymer was not the original party to the loan agreement. We understand, counsel. We understand. And that wasn't addressed in the discussion so far. The assignment agreement of May 2010 was an assignment from a different entity other than the trust. And I think that's important because that ambiguity was never cleared up, even though the appellant had every opportunity to do so twice. And so, you know, before you even get to the issue of what's the extent of the assignment involved, the question has to be responded to, why is this even a valid assignment when the assignor is not the party to any of the underlying agreements, not the contingent interest loan agreement, not the promissory note, not the deed of trust. And it's an important distinction that hasn't been cleared up by the appellant. So that's something else to throw into the mix with respect to the validity of the original assignment. With respect to the actual assignment language itself, I agree with Judge Berzon that this is an assignment of property rights. But the problem also that I would like to draw the Court's attention to is in the contingent interest loan agreement, which specifically states, this is in the record DA-209, that the lender and PRLC intend to create a shared appreciation loan, pursuant to California Civil Code Section 1917, and intend and recognize that the relationship between them shall be solely that of creditor and debtor. There are no property interests that are exchanged with respect to this note. It's a lender-creditor relationship. Well, I assume what they're talking about is the deed of trust, if it has any life to it, essentially. So if there are any property interests at all, the only property interest is the security interest arising from the deed of trust. Right. And as noted in the request for judicial notice that was filed by my co-defendant, Alliance Bank, and we joined in this, that deed of trust, which was assigned allegedly to the appellant in this case, was then assigned to a third party, ATIA. So if there were ever any property rights that were the subject of the original assignment agreement, those property rights are no longer with the appellant, and there's no reason why this court needs to reverse the decision of Judge Phillips and return this matter. When did that occur? When was that? The request for judicial notice was docket number 21. No, I know that. I want to know when the assignment was. I believe it was after the appeal was filed. I see. Okay. So with respect to the original assignment, if there were any property interests that were conveyed, and the language is specific that it's interests in property rights, number one, there were no property rights that were conveyed other than the security interest due to the deed of trust, and the deed of trust was assigned away. So we're having a discussion about property rights that, even if they were the subject of the first assignment, are no longer held by the appellant. So I know that the court's second question to the parties was to address the issue of proximate cause. I would ask if there are any questions with respect to that issue. I don't have any. No.  Okay. Thank you. Thank you, counsel. Okay, now could you put two extra minutes on the clock? Thank you. There was a motion for reconsideration that was made by Raoul Kleimer, indicating that Ben Kleimer would join the case. It's quite mysterious in that that motion doesn't show up on the docket, even though we have a file-stamped version of it, and that's one of the issues that we've raised, is the disappearing motion. Now, counsel says it was untimely. I don't know how he proves it was or wasn't when it doesn't show up on the docket of the court. In any event, that document does exist. The issue of whether the addition of the words LLC. Excuse me. Excuse me. When was it, in fact, filed? Was it late or not? If you have a file-stamped copy, you know when it was filed. When was it filed? The motion for reconsideration is in the administrative record. I know. Was it filed February 14th? Is that correct, counsel? I'm sorry? Was it filed February 14th? Do we have that in the binder? We're going to pull that out so we can confirm the date of it. I also want to touch on the fact that the addition of the word LLC on the assignment doesn't convert it to something that makes the assignment other than the trust, which was what assigned it. A trust can't sue. An individual has to sue on behalf of the trust, and that's what happened here. The Lerman case provides that there's no term of art required in order to make an assignment. The clause that says any of his-slash-her rights is sufficient under all of the case law that's provided. I would note that the Greenlee, the Grain, and the Martin cases, which is the only three cases that the court cited, all of which are pre-1921, to dismiss this cause of action as a partial assignment, none of those cases dismissed a plaintiff's cause of action on those grounds. What they provided is that someone had to bring a necessary party in by a cross-complaint or that the equitable court had to bring them in as well. There is no precedent for finding that there's a partial assignment of a cause of action, something that can't be partially assigned, and then dismissing a case. There's just no precedent here. I apologize if the court requests further briefing on the exact date of the motion for reconsideration. We'd be happy to bring that out. That's okay. I think we have it, counsel. I think we have it. I want to thank you for your-I think you accepted this pursuant to the pro bono program. Is that right? Thank you for your efforts. If there's nothing further on this case, we'll go on to the next case on the calendar.
judges: Berzon, Christen, Nguyen